AMERICAN CAR & FOUNDRY CO. v. KINDERMANN. †

(Circuit Court of Appeals, Eighth Circuit.   July 13, 1914.)

No. 4164.

1. EVIDENCE (§ 588*)—WEIGHT AND SUFFICIENCY—CONTRADICTION BY PHYSICAL FACTS.

When the testimony of a witness is positively contradicted by the physical facts, neither the court nor the jury can be permitted to credit it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2437; Dec. Dig. § 588.*]

2. MASTER AND SERVANT (§ 278*)—ACTION FOR INJURY—NEGLIGENCE OF FELLOW SERVANT.

While plaintiff was working under a car blocked up in defendant's yards for repair, it was struck and knocked from its supports by another car moved by an engine operated by an engineer, who was a fellow servant, and plaintiff was injured.  The ground of defendant's liability relied on was that the spring on the engine, the function of which was to hold the throttle closed, was weak and defective, and failed to work properly.  The only evidence of the defect was the testimony of the engineer, which was contradicted, and it was further shown by defendant without contradiction that the spring worked properly on the night before and the night after the injury, when other engineers were in charge, and that it had not been replaced or repaired, but had been in constant use and worked perfectly up to the time of trial.  *Held*, that the testimony of the engineer was positively contradicted by such physical fact, and that the court should have directed a verdict for defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action at law by Nestor Kindermann against the American Car & Foundry Company.  Judgment for plaintiff, and defendant brings error.  Reversed.

M. F. Watts, Edwin W. Lee, William R. Gentry, and G. A. Orth, all of St. Louis, Mo., for plaintiff in error.

Lon O. Hocker, of St. Louis, Mo. (George F. Haid, of St. Louis, Mo., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and REED, District Judges.

TRIEBER, District Judge.   This is an action to recover damages for injuries sustained by the defendant in error, who will be referred to herein as the plaintiff, while in the employ of the plaintiff in error, referred to herein as the defendant, due to the alleged negligence of the defendant.   The petition alleges that on the 12th of March, 1913, he was directed to go under a car standing in defendant's yards for the purpose of making repairs on the same; that the body of the car was raised several feet from the ground, and each end of the car body was resting on supports or wooden timbers; that while he was under the car an engine operated by the defendant ran into the car, knocked it from its supports, causing it to fall on plaintiff, thereby injuring him.   The negligence of the defendant is charged to con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied October 5, 1914.

sist of the failure of the defendant to exercise ordinary care to provide plaintiff with a reasonably safe place to work; that it made no provision for his being warned or protected against the movement of cars in the yards, and in failing to advise the other employés of plaintiff's dangerous position under said car; that the engine which ran into the car was in a defective and unsafe condition in that the spring on the throttle was defective and would not work, so as to enable the engineer to stop the same or to check the speed thereof in time to avert the collision.

The evidence on the part of the plaintiff was that he was in the employ of the defendant, and on the day of the accident, he was assigned to work underneath a car belonging to a certain railroad company, which car had been sent to defendant's plant for repairs; the car had been taken off the wheels and put on two horses or timbers about 20 inches high, one near each end of the car; the car leaned somewhat to one side, so that one edge of it was much closer to the ground than the other; the position of plaintiff, while at work under the car was such that he could not see whether other cars were approaching or not; he was driving rivets into the bottom of the car; a young man named Senciboy was his helper; Senciboy stood inside of the car while plaintiff was working on it; Senciboy called out a warning to him that a car was coming in on the track and was going to hit the car on which plaintiff was at work; plaintiff attempted to escape, but before he could do so the car on which he was working was struck by the other car, inflicting the injuries complained of.

The cause of the accident was that the switching crew in the employ of the defendant was handling an engine and a car attached thereto, intending to bring the same into the yard where plaintiff was at work; the engine was headed north, but was backing toward the south, having one box car immediately south of it, which it was pushing into the yard; between the gate and the car where plaintiff was at work there stood a box car, which was a few feet inside of the yard and a short distance north of the car under which plaintiff was working and on the same track. The plan of the switching crew was to enter the yard above the car attached to the engine, run against the box car standing north of the one where plaintiff was at work, draw it out of the yard, and switch it away, replacing it with the car that was attached to the engine. The engine approached very slowly, the bell being rung at the time by the fireman; when the car which was coupled to the engine bumped against the car which the engine was to draw out of the yard the coupling missed, and one of the members of the switching crew gave a stop signal which the engineer immediately obeyed; the knuckle on the car was then readjusted by the switchman and a come ahead signal was given; the engineer opened the throttle, moved slowly forward until he bumped into the car the second time, received a second stop signal, and immediately shut off steam and started to apply the brake, but as he did so the throttle flew open, permitting steam to come into the cylinders of the engine, and thereby caused the engine to make a sudden lurch forward with such violence as to force the car nearest the one on which plaintiff was working toward the south, striking the car where

plaintiff was at work, and knocking it down upon him. The cause of this lurch, as testified to by Mr. Overpeck, the engineer in charge of the engine, was that the spring on the throttle, the function of which was to hold the throttle closed, had become weak and lost its temper, so that it would at times fail to hold the throttle closed when the engineer closed it. He testified that the throttle on that engine had been in that condition for about three weeks preceding the accident, and that on two occasions prior to the accident he had made a written report of the condition of the spring to the night foreman of the roundhouse where the engine was kept; that the report was made to a man he knew as Buster Brown, the man in charge of the roundhouse at night. In addition to the two written reports made to this man Mr. Overpeck testified that he had notified him of the defect of the spring orally four or five times before the accident, and that Buster promised to fix it, but it was never fixed. Mr. Overpeck also testified that Mr. Cowell, who was his superior, had instructed him that if anything was wrong about the engine to hand the written report to Buster, if he (Cowell) was gone.

On the part of the defendant, Mr. Cowell testified that he had never instructed Mr. Overpeck to make any reports to Buster, that Buster was merely a subordinate employé in charge of the roundhouse at night, and that if any written reports had been made by Mr. Overpeck and left at the roundhouse they would have been received by him. Mr. Buster denied positively that Overpeck had either made written or oral reports to him concerning the condition of the spring at any time preceding the accident.

The defendant also introduced evidence tending to show that the spring in the throttle on that engine was in perfect condition at that time; that it has never been changed since the accident; that it worked perfectly immediately before and after the accident, when it was tested by the defendant's representatives, has been used ever since, and was still in perfect condition at the time of the trial. Mr. Cowell and the master mechanic of the defendant, Mr. Cribben, examined the spring while Mr. Overpeck was on duty on the engine, and after a most thorough test found it in perfectly good condition.

There was also evidence of experts to the effect that such springs as the one in question usually lasted the lifetime of the engine on which they are placed. They also testified that the rules of the defendant company required that when anything was wrong with an engine, upon discovery by the engineer, it was his duty to report it to the head engineer, Mr. Cowell, and if Mr. Cowell was absent from the roundhouse the written report was to be made out by the engineer and left at the roundhouse for Mr. Cowell. It was also testified that the company did not carry in stock such springs as the one which it is claimed caused the accident, nor could one be obtained from any other place than the locomotive works which had manufactured the locomotive. Mr. Evans, another engineer, testified that he had handled the same engine on the night preceding the accident, and also on the night following, and that the spring worked perfectly both nights.

Counsel for the defendant in error, in their brief as well as argument, conceded that under the decisions of the national courts the engineer, Overpeck, in the operation of his engine, was a fellow servant of the plaintiff. The ground of liability upon which plaintiff relies is stated in the brief as follows:

"Liability is charged by the plaintiff by reason of the fact that the throttle of the engine which caused the accident had been permitted to remain in a defective condition for about three weeks; that defendant was advised of this defective condition, and negligently failed to repair the same, or to take the engine out of service pending repairs."

Counsel have very ably argued the question whether Mr. Buster, by reason of the fact that Mr. Overpeck testified that he had been instructed by Mr. Cowell to report to him any defects in the engine during his (Cowell's) absence, was a vice principal, and a report made to him and his promise to have the repairs made was notice to and a promise of the company. The only testimony on the part of the plaintiff that such instructions were given is that of Mr. Overpeck, which was positively denied by Mr. Cowell and Mr. Buster. But as that was a question of credibility of the witnesses, and giving the strongest probative effect to the testimony of the party against whom it is sought to have a verdict directed, we would not feel at liberty to reverse a judgment submitting that question of fact to the jury. We do not deem it necessary, in view of the conclusions reached, to determine whether Mr. Buster would, under these circumstances, be a vice principal or merely a fellow servant.

[1] In our opinion there is no substantial evidence justifying the submission to the jury of the question as to whether the spring on the throttle on that engine was defective. It is true that the testimony of Mr. Overpeck is positive; but the rule is well settled that when the testimony of a witness is positively contradicted by the physical facts, neither the court nor the jury can be permitted to credit it. This was expressly decided by this court in M., K. & T. Ry. Co. v. Collier, 157 Fed. 347, 353, 88 C. C. A. 133. A petition for certiorari in that case was denied by the Supreme Court. 209 U. S. 545, 28 Sup. Ct. 571, 52 L. Ed. 920.

[2] The uncontradicted evidence in this case shows that this engine was used by Engineer Evans on the night preceding the accident and on the night following it, and the spring worked perfectly both nights. The testimony of Mr. Cowell and Mr. Cribben, the master mechanic, was that they made an examination of the spring shortly after the accident, and in the presence of Mr. Overpeck, tested it and found it in perfect condition. The same spring was used up to the date of the trial, and no defect was ever found in it. A case almost parallel with this is Galusha v. Chicago Great Western Ry. Co., 165 Fed. 333, 335, 336, 91 C. C. A. 319.

In view of this evidence, we are of the opinion that Mr. Overpeck's testimony is positively contradicted by the physical facts, and therefore the court should have granted the request of the defendant for a directed verdict in its favor.

The judgment is reversed, with directions to grant a new trial.