## ERIE R. CO. v. HURLBURT.

### (Circuit Court of Appeals, Sixth Circuit.   April 6, 1915.)

### No. 2531.

1. TRIAL ⬯⟲420—MOTION FOR DIRECTED VERDICT—WAIVER.

Defendant waived its exception to the overruling of its motion for a directed verdict at the close of plaintiff's evidence by thereafter introducing evidence in its own behalf.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983;  Dec. Dig. ⬯⟲420.]

2. RAILROADS ⬯⟲327—CROSSING ACCIDENTS—LIABILITY—CONTRIBUTORY NEGLIGENCE.

A traveler who looked for trains as she approached a railroad crossing was chargeable with seeing what there was to be seen by an ordinarily prudent person in the exercise of reasonable care, and if she looked attentively, and failed to see what was plainly to be seen, she was negligent.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043–1056; Dec. Dig. ⬯⟲327.]

3. RAILROADS ⬯⟲324—CROSSING ACCIDENTS—LIABILITY—CONTRIBUTORY NEGLIGENCE.

Where plaintiff, riding with her husband as they approached a railroad crossing, was looking out for her own safety and using her own eyes and ears for the purpose of determining whether trains were approaching wholly independent of her husband, she was responsible for her own personal negligence in failing to see a train which might have been seen by exercising reasonable care while looking.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1020–1025; Dec. Dig. ⬯⟲324.]

4. NEGLIGENCE ⬯⟲89—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE—IMPUTED NEGLIGENCE.

Where a driver and one riding with him were both engaged in looking and listening for a train as they approached a crossing, the negligence of each while so engaged was the negligence of both.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 130–137; Dec. Dig. ⬯⟲89.]

5. RAILROADS ⬯⟲350—CROSSING ACCIDENTS—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action for injuries to a person struck by a train at a crossing from which the track could be clearly seen for about 1,500 feet, her testimony that she looked and listened for trains, and continued to do so until struck by the train, but did not see it, "because the train was not there," was incredible, and did not make a question for the jury, nor support a verdict in her favor.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ⬯⟲350.]

In error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; William L. Day, Judge.

Action by Emma Hurlburt against the Erie Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

I. T. Siddall, of Cleveland, Ohio, for plaintiff in error.

W. J. Beckley, of Ravenna, Ohio, for defendant in error.

⬯⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WARRINGTON and DENISON, Circuit Judges, and Mc-CALL, District Judge.

McCALL, District Judge. This case was tried to a court and jury, resulting in a verdict and judgment for the plaintiff below (hereinafter called the defendant). The defendant below (hereinafter called the company), brings error.

At the close of defendant's evidence, the company moved the court for a directed verdict in its favor. The motion was overruled, and thereupon the company introduced its evidence. At the close of all the evidence, the company renewed its motion for a directed verdict. The motion was also overruled, and the company reserved exception. This action of the court is made the grounds for the fourth, fifth, and sixth assignments of error.

[1] The company waived the exception taken to the overruling of its motion to direct a verdict in its favor, at the close of the evidence offered by the plaintiff, below, by thereafter introducing evidence in its own behalf. Big Brushy Coal & Coke Co. v. Williams, 176 Fed. 532, 99 C. C. A. 102, and cases cited. This disposes of the fourth assignment.

The fifth and sixth assignments are to the effect that the court erred, in refusing to instruct the jury to return a verdict for the company, upon all the evidence. Mr. Justice White (now Chief Justice), in speaking for the Supreme Court, in Southern Pacific Co. v. Pool, 160 U. S. 440, 16 Sup. Ct. 339, 40 L. Ed. 485, said:

"There can be no doubt where evidence is conflicting that it is the province of the jury to determine from such evidence the proof which constitutes negligence. There is also no doubt, where the facts are undisputed * * * that the question of negligence is one of law."

We must therefore consider the evidence to determine if it is undisputed. If undisputed, then is it of such character as fair-minded men will honestly draw different conclusions from the facts proven? Richmond & Danville Railroad Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642.

There is only one surviving eyewitness of the accident, and that is Mrs. Emma Hurlburt, the defendant in error. Her evidence touching the question of contributory negligence is wholly undisputed. The evidence relating to the physical surroundings of the place where the accident occurred is practically undisputed. The facts are, substantially as follows:

A buggy, occupied by Mrs. Hurlburt and her husband, was struck by one of the company's engines at a point where the highway crossed the railroad, killing her husband and seriously injuring Mrs. Hurlburt. It occurred about 9 o'clock on the morning of March 1, 1912. The weather was clear and cold. The parties resided near the place of the collision and were familiar with the surroundings and the train schedule. They knew that on this morning the train from the east—the one that struck them—was late and had not passed. They were traveling along the highway with the curtains of the buggy down, and they were wrapped up, as persons would be on such a morning. The

highway approached and crossed the railroad at an angle of about 31 degrees. They were traveling nearly due west. The train approached from the east, going in a southwesterly direction, and on their right side. East from the point of crossing, the railroad was on a 1 degree curve, and the track could be clearly seen for about 1,500 feet. It was a double track and on a fill. The train was on the track farthest from the travelers. They stopped when they reached a point, when, sitting in the buggy, they were about 15 feet from the nearest rail of the track next to them, and both of them looked east along the track and listened for the train, which they knew was late and had not passed. They neither saw nor heard it. Thereupon, the husband, who was driving, and sitting on the right side of the buggy, started the horse, which shortly began to trot. The husband made no other effort to ascertain if it was safe to proceed across, but Mrs. Hurlburt, through an opening that she made between the curtains of the buggy top, on the side or corner next to the track, over which the delayed train would run, and for which they were looking, said that she watched the track to the east, from the time the horse started until the collision; that she could see the track to the cut, and that she saw no train, "because the train was not there." The cut was about 1,500 feet east of the crossing.

[2] Assuming for the moment that Mrs. Hurlburt was driving the horse on the occasion in question, and was chargeable with exercising that degree of care imposed by law, upon one in charge of a team, and driving along a highway, as in this case, could there be any doubt as to the conclusions of fair-minded men as to her contributory negligence under the facts stated? Under the assumed case, it would be her duty to look. This she said she did. If she looked, she was chargeable with seeing what was there to be seen, by an ordinarily prudent person, in the exercise of reasonable care while looking. If she looked attentively, and failed to see what was plainly to be seen, then she was negligent; and if such negligence was a proximate cause of the injury, then in such case we think the jury should have been told to return a verdict for the company. N. P. Railroad v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; I. C. R. R. Co. v. Ackerman, 144 Fed. 959, 76 C. C. A. 13; Kallinerten v. Cowen, 111 Fed. 297, 49 C. C. A. 346; Philadelphia & R. R. Co. v. Peebles, 67 Fed. 591, 14 C. C. A. 555.

[3] It is insisted by counsel for the defendant in error, that Mrs. Hurlburt was a passenger on the occasion in question, and that the negligence of her husband, the driver, would not be imputed to her. The cases cited support the principle announced, and no doubt it is applicable in a proper case. In this case, however, the defendant in error is left to state her own course of conduct, and her evidence, we think, clearly takes the case out of the rule contended for. Among other things she said:

"I had crossed this crossing a great many times. As we approached that crossing, my husband and I spoke of the fact that train 3 had not passed. As we approached, I did keep a lookout for this train, independent of my husband. I certainly was keeping a lookout for train 3 from the time that I came in sight of the crossing, and I expected to keep a lookout for the train,

and this was entirely independent of what my husband would do along that same line, so far as I was concerned."

And again:

"I looked up the track. All the time from the time we stopped the buggy, which was about 15 feet, or not more than 15 feet from the first rail, until the horse and buggy was driven upon the track. I looked out through the opening that I made in the curtains. I didn't see the train because the train was not there. * * * I didn't say to him to drive on and I would keep watch through there, but he knew that I was looking at the back, the same as he had looked too, before. * * * When we got upon the first track, that is when the horse was on the first track, I was looking out through the opening between the curtains, and so far as I know, I was looking out when we were struck. That is the last I remember."

Thus it appears that she had voluntarily entered upon the task of looking out for her own safety, and, if her evidence is to be believed, she was using her own eyes and ears for that purpose, wholly independent of her husband, and was therefore responsible for her own personal negligence. Cotton v. Willmar & Sioux Falls Ry. Co., 99 Minn. 366, 109 N. W. 835, 8 L. R. A. (N. S.) 643, 116 Am. St. Rep. 422, 9 Ann. Cas. 935; Rebillard v. Minneapolis Ry. Co., 216 Fed. 503, 133 C. C. A. 9.

[4] If both of them were engaged in looking and listening for a train, as they evidently were, then the negligence of each, while so engaged, must be regarded as the negligence of both of them. Railroad v. Kistler, 66 Ohio St. 327, 64 N. E. 130. So that from any view that we take of the undisputed evidence of the defendant in error, it follows that she is chargeable with her own negligence on the occasion in question. Was she guilty of negligence, if she looked and listened as she testified?

[5] The Supreme Court of Indiana has thus clearly stated the rule that the testimony of a plaintiff, injured at a railway crossing by collision with a train, that he looked and listened, "is not sufficient to support a verdict in his favor if the physical facts are such that, if he did look and listen attentively, he must have heard or seen the approaching train in time to escape injury therefrom." P., C., C. & St. L. v. Fraze, 150 Ind. 576, 50 N. E. 576, 65 Am. St. Rep. 377; see, also, American Car & Foundry Co. v. Kindermann, 216 Fed. 499, 132 C. C. A. 577. Mr. Justice Harlan, speaking for the court in Union Pacific Ry. Co. v. McDonald, 152 U. S. 283, 14 Sup. Ct. 627, 38 L. Ed. 434, said:

"Upon the question of negligence the court may withdraw a case from the jury altogether and direct a verdict for the plaintiff or the defendant as the one or the other may be proper, where the evidence is undisputed or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it."

The substance of the evidence of the defendant in error is that, although she looked and listened at a time and place where and when she should have seen or heard the train, she was ignorant of the fact that it was bearing down upon her, because she neither saw nor heard it.

In the case of Williams v. Choctaw, Oklahoma & Gulf Railroad Co., 149 Fed. 106, 79 C. C. A. 148, this court said:

"If accident comes, and he pleads ignorance, he must show his ignorance was not only actual, but excusable"—citing cases.

It challenges human credulity to be asked to believe that Mrs. Hurlburt looked and listened, as she says that she did, and neither saw nor heard the train that smashed into her buggy and wrought such havoc. There is no evidence that tends to explain why she did not see the oncoming train. Her own testimony explodes every theory upon which to predicate an explanation that would tend to excuse her. Indeed, it is so improbable that it does not afford a scintilla of evidence upon which to go to the jury.

We are of opinion that it was error to refuse the company's motion for a directed verdict at the close of all the evidence.

There are other errors assigned, which we do not deem necessary to consider, since they may not arise upon another trial.

For the reason stated, the case must be reversed and remanded for a new trial, with costs.