## ATCHISON, T. & S. F. RY. CO. v. McNULTY.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1922. Rehearing Denied January 16, 1923.)

No. 5964.

1. **Negligence** ⬤⟳93(1)—**Automobile driver's negligence may be imputed to passenger.**

   The negligence of the driver of an automobile is imputed to a passenger, where the relation between them is such that the passenger has control over the movements of the vehicle.

2. **Negligence** ⬤⟳93(1)—**Automobile driver's negligence held imputable to passenger.**

   Where plaintiff, who was driving a car owned by her father, as she frequently did, invited a young man acquaintance whom she met to ride, and permitted him to drive, while she sat beside him, his negligence in so driving was imputable to plaintiff, who at all times had the right to control the movement of the car.

3. **Railroads** ⬤⟳330(2)—**Failure to give signals does not relieve traveler of duty to exercise care.**

   Neither open gates nor failure of the railway company to give signals at a crossing relieve one about to cross the tracks from the duty to use due care to look and listen for an approaching train.

4. **Railroads** ⬤⟳327(2)—**Automobile driver held chargeable with contributory negligence.**

   The driver of an automobile in the daytime, who could have plainly seen an approaching train at any time after reaching a point 70 feet from a railroad crossing, but continued without reduction of speed until the car was struck by the train on the crossing, *held* chargeable with negligence as matter of law.

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

At law. Action by La Vera M. McNulty, by C. N. McNulty, her next friend, against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

Erl H. Ellis, of Denver, Colo., and Gardiner Lathrop, of Chicago, Ill. (Henry T. Rogers, Lewis B. Johnson, Pierpont Fuller, Percy Robinson, and Frank A. Kemp, Jr., all of Denver, Colo., on the brief), for plaintiff in error.

Harry S. Silverstein, of Denver, Colo., and Chester B. Horn, of Colorado Springs, Colo. (G. Dexter Blount, of Denver, Colo., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and MUNGER, District Judge.

MUNGER, District Judge. The defendant in error had a verdict and judgment in an action for personal injuries alleged to have resulted from the negligence of the plaintiff in error, and this proceeding seeks a review of the refusal of the court at the close of the evidence, to instruct the jury to return a verdict in favor of the plaintiff in error. The parties will be referred to as they appeared in the trial court.

The plaintiff's petition alleged that she was injured when the defendant's train struck an automobile in which she was riding, as the

---

automobile was crossing the railway track of the defendant upon a public street crossing in the city of Colorado Springs, Colo.; that the train was negligently operated; and that proper warnings of its approach were not given. The sufficiency of the evidence of the defendant's negligence is conceded, and the sole question presented is whether the facts proved the contributory negligence of the plaintiff so conclusively, that a verdict should have been directed against her. The accident occurred between 5 and 6 o'clock in the afternoon of August 3, 1920, as the automobile was being driven east along Del Norte street in the northern part of Colorado Springs. Del Norte street is 100 feet wide. The automobile was struck by the engine of a north-bound train just as the front portion of the automobile arrived on the track. Four hundred feet south of and parallel to Del Norte street is Caramillo street, 100 feet wide; and 850 feet south of Caramillo street is Columbia street. The portion of the city adjacent is platted into blocks 400 feet square north of Caramillo street. The railway right of way south of Del Norte street is 80 feet wide, and the single line of railway track runs along its center, upon a grade hardly raised above the level of the streets or of the adjoining lands. The right of way just south of Del Norte street cuts through one of the city blocks leaving a strip of land fronting on Del Norte street for about 225 feet on the west, upon which there are three or four dwelling houses facing Del Norte street; the one farthest to the east and nearest to the railway track being a two-story frame dwelling, set back from the street. East of this dwelling and between it and the right of way is a narrow street about 20 feet in width, called Del Norte court, which extends south along the right of way for about two-thirds of the block. There are other buildings in the vicinity, but their location is not now important. The railway track to the south of Del Norte street curves to the east until about Columbia street. A person approaching the railway crossing from the west on Del Norte street in an automobile at a point 88 feet west of the crossing could have seen to the southeast along the railway track a distance of 1,446 feet, and could have seen all the intermediate points along the track, except that the trunk of one shade tree in front of the last house, and the trunk of a smaller tree and one telegraph pole and two columns of the front porch of that house, would have slightly obstructed full vision. It was admitted by plaintiff that an approaching train would have been in plain view at a point 70 feet west of the crossing, if the train had been no farther south than Caramillo street, which was 400 feet south of Del Norte street. There were no buildings or other obstructions along the railway track; the right of way, or Del Norte court, that would have hidden an approaching train. At a point 42 feet west of the crossing, the view to the south along the track was clear for 1,100 feet. The last obstruction to view of a train to the south had been passed at the point 70 feet west of the track.

[1] The witnesses differed as to the speed of the train, placing their estimates from 12 to 35 miles an hour. The speed of the automobile, as it approached the crossing, was estimated by the witnesses as 10 to 15 miles per hour, and no change of speed was made, as it drew near

the railway track. The plaintiff was a young woman 19 years of age at the time of the accident, residing at the home of her parents about three blocks from where the accident occurred. The automobile had just been overhauled and was in good condition. It had a front and rear seat and the driver sat on the left of the front seat. The plaintiff had driven this automobile daily when it was at home and had driven the family cars for nearly four years. The plaintiff left her home about 5 o'clock in the afternoon, driving this car, to obtain some supplies for the family's evening meal. She made her purchases at a store some six or seven blocks away and started home. She met a young man named Wilson, with whom she was acquainted, and stopped the car and talked with him. Wilson also wished to obtain some supplies from a nearby store, and the plaintiff asked him to get in the car. Wilson was a young man then 17 or 18 years of age, was a friend of the plaintiff's family, and had been riding with the plaintiff two or three times before this occasion. Wilson usually drove the car on these trips and had driven the car away from plaintiff's home to the knowledge of plaintiff's father. Wilson accepted plaintiff's invitation to get in the car, and she drove the car over the crossing where the accident later occurred and stopped at a store on the first street corner west of the crossing. After leaving the store, Wilson drove the car, the plaintiff sitting to the right of him on the same seat, and a young brother of plaintiff, who had accompanied her, rode upon the rear seat. Wilson drove the car south for two blocks, but it was decided not to stop at the store where plaintiff had already made some purchases, so he drove the car a block farther west and then a few blocks north to Del Norte street and then east about two blocks until the railway tracks were reached where the accident occurred. If there was negligence on the part of Wilson, the driver of the automobile, was it imputable to the plaintiff? While there are many instances in which a passenger in a vehicle is not responsible for the negligence of the driver, because he exercises no control over him (Little v. Hackett, 116 U. S. 366, 379, 6 Sup. Ct. 391, 29 L. Ed. 652; Dale v. Denver City Tramway Co., 173 Fed. 787, 788, 97 C. C. A. 511, 19 Ann. Cas. 1223, 8 L. R. A. [N. S.] 597), the negligence of the driver is imputed to the passenger where the relation between them is such that the passenger has control over the movements of the vehicle (Kayser v. Van Nest, 125 Minn. 277, 279, 146 N. W. 1091, 51 L. R. A. [N. S.] 970; Union Pacific Ry. Co. v. Lapsley, 51 Fed. 174, 177, 2 C. C. A. 149, 16 L. R. A. 800; Bernhardt v. City & S. Ry. Co., 263 Fed. 1009, 1012, 49 App. D. C. 265; Booth v. Mister, 7 Car. & P. 66, 67; Markowitz v. Metropolitan St. Ry. Co., 186 Mo. 350, 357, 85 S. W. 351, 69 L. R. A. 389; Slothower v. Clark, 191 Mo. App. 105, 110, 179 S. W. 55; Louisville Lozier Co. v. Sallee, 167 Ky. 499, 504, 180 S. W. 841; Ulman v. Lindeman, 44 N. D. 36, 41, 176 N. W. 25, 10 A. L. R. 1440; Hammond v. Hazard, 40 Cal. App. 45, 49, 180 Pac. 46; Solon & Billings v. Pasche [Tex. Civ. App.] 153 S. W. 672; Bofill v. New Orleans Ry. & Light Co., 135 La. 996, 1002, 66 South. 339, L. R. A. 1915C, 419; Read v. City & Suburban Ry. Co., 115 Ga. 366, 369, 41 S. E. 629; Elliott on Railroads, § 1174; 36 Cyc. 1560).

[2, 3] The facts are undisputed as to the relationship of the parties in the automobile at the time of the accident. The plaintiff at that time was in control of the car, with the right to direct its movements. The young man whom she had invited to ride with her, in undertaking to do the mechanical work of driving, was acting for her. There had been an endeavor to obtain food supplies for plaintiff's family, but that had been accomplished, and the car was being driven towards the home of the plaintiff. There was no point of time when the plaintiff did not have the legal right to direct the car to be stopped or to be driven where or as she wished, nor when she did not have the legal right to require Mr. Wilson to alight from the car. Under these circumstances, he was her agent, and his negligence was imputable to her. The testimony shows that Mr. Wilson lived near this crossing and was familiar with it and with the trains which ran over it. He testified that the railway gates were open. The railway company had installed gates at this crossing about three years before, of the usual type, with long arms which are raised and lowered. These gates were never operated between 4 in the afternoon and 8 o'clock in the morning, but Mr. Wilson testified that he did not know the customary times when the gates were in use. There was also testimony from which it could have been found that neither the bells on the engine, nor the alarm bells which had been installed at this crossing, rang as the train approached, and these facts are relied upon as excusing the driver's inattention to the train. Neither open gates nor failure of the railway company to give signals at a railway crossing relieves one about to cross the tracks from the duty to use due care to look and listen for an approaching train. Union Pacific R. Co. v. Rosewater, 157 Fed. 168, 172, 84 C. C. A. 616, 15 L. R. A. (N. S.) 803, 13 Ann. Cas. 851; Delaware, L. & W. R. Co. v. Welshman, 229 Fed. 82, 85, 143 C. C. A. 358, L. R. A. 1916E, 816.

[4] The location of the engine of the approaching train at the time the automobile reached the point 70 feet west of the crossing is not in serious dispute. If the automobile was traveling at the lowest estimated speed of 10 miles an hour and the train was proceeding at the highest estimated speed of 35 miles an hour, then the train was traveling three and one-half times as rapidly as the automobile, and therefore could not have been over 245 feet from the crossing, when the automobile was 70 feet from the crossing. If any other estimates of the relative speeds are accepted, the train would have been closer to the crossing. It is undisputed that the train would have been in plain view for at least 400 feet to the south from any point in the road less than 70 feet from the crossing. Mr. Wilson's testimony, which is unchallenged, shows that he glanced but once for an approaching train from the south, and that this look was given at a point more than 90 feet west of the crossing where he could see down the track a distance of only about 50 feet south of the crossing, because he had not yet passed the last dwelling, and he did not again look for an approaching train. The plaintiff testified that she first looked southward when they were somewhere in front of the last house, and that she was looking towards the south at a point about where Del Norte court or the railway right of way began, and kept on looking in this direction; but the record does

not show any testimony by her as to when or where she saw the train, except that it was then so close that nothing could have been done by Mr. Wilson or herself to have averted the accident. The only warning given by the plaintiff was a scream uttered by her when the automobile was within 2 or 3 feet of the track and almost at the moment of collision. There was no other testimony as to their looking for the train or as to what was seen by them, and it therefore appears that Mr. Wilson did not look for the train after he had passed the obstructions and during the last 70 feet of approach to the crossing, where the view was unobstructed and the approaching train was in plain view, less than 250 feet away. The plaintiff does not testify that she did not see the train, after passing the obstruction of the last house, when she says that she looked to the south. There is therefore no testimony of a futile endeavor by either of the witnesses to see the train after passing the obstruction, nor could such testimony prevail under the circumstances, for it would be so contrary to the physical facts as to be incredible. Northern Pacific Railroad Co. v. Freeman, 174 U. S. 379, 384, 19 Sup. Ct. 763, 43 L. Ed. 1014; Chicago & N. W. R. Co. v. Andrews, 130 Fed. 65, 71, 64 C. C. A. 399; St. Louis & S. F. R. Co. v. Cundieff, 171 Fed. 319, 325, 96 C. C. A. 211; Rich v. Chicago, M. & St. P. Ry. Co., 149 Fed. 79, 85, 77 C. C. A. 663; Chicago, B. & Q. R. Co. v. Munger, 168 Fed. 690, 692, 94 C. C. A. 176; Erie R. Co. v. Hurlburt, 221 Fed. 907, 910, 911, 137 C. C. A. 477. The only reasonable deduction that can be drawn from the evidence is that the driver and the plaintiff either did not look toward the approaching train at a place where a view could have been had a reasonable distance down the track, or, if either of them looked at such a place, no heed was given to the oncoming train, until it was too late to avoid the accident and the conduct of the driver was negligence as a matter of law. Northern Pacific Railroad Co. v. Freeman, 174 U. S. 379, 384, 19 Sup. Ct. 763, 43 L. Ed. 1014; Chicago Great Western R. Co. v. Biwer (C. C. A.) 266 Fed. 965, 969; Northern Pac. Ry. Co. v. Tripp, 220 Fed. 286, 290, 136 C. C. A. 302; Gordon Fireproof Warehouse & Van Co. v. Hines (C. C. A.) 272 Fed. 604, 606; Chicago Great Western Ry. Co. v. Smith, 141 Fed. 930, 931, 73 C. C. A. 164; Illinois Central R. Co. v. Ackerman, 144 Fed. 959, 962, 76 C. C. A. 13; Grimsley v. Northern Pac. Ry. Co., 187 Fed. 587, 589, 109 C. C. A. 417. The act of looking towards the track at a point where the view was obstructed was not sufficient diligence for it is the settled rule that a traveler approaching a known railway crossing "does not relieve himself of the imputation of negligence by looking where he cannot see, and omitting to look again where he could see, and avoid danger." Grand Trunk Ry. Co. v. Cobleigh, 78 Fed. 784, 787, 24 C. C. A. 342, 345; Denver City Tramway Co. v. Cobb, 164 Fed. 41, 43, 90 C. C. A. 459; Chicago, M. & St. P. Ry. v. Bennett, 181 Fed. 799, 804, 104 C. C. A. 309; Northern Pacific Ry. Co. v. Tripp, 220 Fed. 286, 289, 290, 136 C. C. A. 302.

There is another reason why a verdict should have been directed in favor of the defendant. The plaintiff herself had the right to control the driving of the automobile, knew the crossing, and testifies that she

was continuously looking to the south as they neared the crossing, but she gave no alarm to the driver until the automobile was almost upon the railway track. She must have known of the danger and have seen the train if she looked and her failure to warn the driver was negligence upon her part. Rebillard v. Minneapolis, St. P. & S. S. M. Ry. Co., 216 Fed. 503, 507, 133 C. C. A. 9, L. R. A. 1915B, 953; Davis v. Chicago, R. I. & P. Ry. Co., 159 Fed. 10, 18, 19, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424; Hall v. West Jersey & S. R. Co., 244 Fed. 104, 107, 156 C. C. A. 532; Erie R. Co. v. Hurlburt, 221 Fed. 907, 910, 137 C. C. A. 477.

The judgment will be reversed and a new trial awarded.

---

&xrarr;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes