### HICKEY v. MISSOURI PACIFIC RAILROAD CORPORATION IN NEBRASKA.

(Circuit Court of Appeals, Eighth Circuit. September 22, 1925.)

No. 6940.

1. **Railroads** ⊕⇒337(5)—**Failure to give crossing signals held not proximate cause of collision with automobile.**

Railroad company's negligent failure to give crossing signals, if established, *held* not proximate cause of collision with automobile which was unable to stop because of ice on highway.

2. **Railroads** ⊕⇒327(8)—**Facts held to show either automobile driver saw train or failed to look at point where view was unobstructed.**

Facts as to speed of approaching train and automobile *held* to establish either that automobile driver saw train when he was 175 feet from crossing, or that he failed to exercise ordinary care by looking at that point, though his view was thereafter obstructed until within 20 feet of crossing.

3. **Trial** ⊕⇒139(1)—**On defendant's motion for directed verdict, physical facts control.**

Plaintiff, though entitled on defendant's motion for directed verdict to have evidence taken most favorably to him, is not entitled to have credence given to testimony which conflicts with plain physical facts.

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action by Ralph E. Hickey, administrator of Edward Hickey, deceased, against the Missouri Pacific Railroad Corporation in Nebraska. Judgment for defendant, and, plaintiff brings error. Affirmed.

Francis S. Howell, of Omaha, Neb. (William R. Patrick, Edward P. Smith, William A. Schall, and Frank E. Sheehan, all of Omaha, Neb., on the brief), for plaintiff in error.

Yale C. Holland, of Omaha, Neb. (E. J. White, of St. Louis, Mo., and J. A. C. Kennedy, of Omaha, Neb., on the brief), for defendant in error.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. This is an action to recover damages for the death of Edward Hickey, claimed to have been caused by negligence of the defendant in error, hereafter called defendant. The specific negligence relied upon was the running of one of defendant's passenger trains over a public highway crossing without giving signals of warning. The trial court directed a verdict for the defendant. Writ of error has brought the case here.

Plaintiff in error, hereafter called plaintiff, is a son of the deceased. He testified, in substance, as follows: On January 25, 1922, about 3 p. m., Edward Hickey and plaintiff were driving west in an automobile along the county road which crosses the railroad track of the defendant about a mile and a half north of Springfield, Neb. The railroad track at this point runs north and south and is straight for about 1,060 feet north of the crossing. The automobile was a Buick roadster, a left-hand drive car. It had side curtains, in which were isinglass windows. The curtains were drawn and buttoned up. The car weighed 2,900 pounds, and was owned by the father. The plaintiff, who was about 30 years of age, was driving for his father and upon his father's business. Both father and son were well acquainted with the crossing and the surrounding country. At any place along the highway, from a point 500 feet east of the crossing to a point 174 feet east, a person driving an automobile could see a train approaching the crossing from the north at any place on the railroad track for a distance of 1,400 to 1,600 feet. Going west toward the railroad track from the 174-foot point on the highway, the view of the railroad track north of the crossing was partially or wholly obstructed by the natural contour of the land, until a point was reached in the highway about 20 feet east of the east rail of the railroad track, when the view to the north was again unobstructed.

Plaintiff was an experienced driver. His hearing and eyesight were good. At a point about 500 feet from the crossing he looked and listened for a train. He saw none and heard no signal. The automobile was then going from 15 to 18 miles per hour. He continued to look and listen until he passed the point 174 feet distant from the crossing.

At this point the automobile was going about 10 miles per hour, and was coasting, as there was a gentle downgrade. Plaintiff continued to listen, but heard no signals. The automobile was making no noise. Upon reaching the point 20 feet from the crossing, the automobile was going about 8 miles per hour, still coasting. At this point plaintiff again looked, and this time he saw the train about 200 feet distant, approaching the crossing from the north. He applied the foot brake and the emergency brake. Both were in good condition and responded. The speed of the car was checked slightly, but the car skidded ahead toward the track. When the front wheels were almost on the first rail, plaintiff threw the "clutch in gear" and applied the power. The car picked up a little, moved forward a few feet, and was hit near its rear end by the locomotive.

Plaintiff knew when the car began to skid that this was caused by ice in the road, but he had not known of any ice until that time. Had it not been for the ice, he could have stopped the car in 8 or 9 feet.

He was unable to state whether his father looked or listened while they were approaching the crossing.

Other witnesses for the plaintiff testified that there was ice in the road for a distance of 15 or 20 feet back from the railroad track, and that, after the accident, they saw marks on the ice where the wheels of the automobile had skidded. No one of the witnesses was able to state whether the ice extended further back than 20 feet.

One witness, who was on the railroad train, testified that no signals were given as the train approached the crossing. The same witness testified that the train was going at the time about 45 miles per hour.

On behalf of the defendant, there was testimony that a person in an automobile had a view of the railroad track for 1,200 to 1,400 feet north of the crossing while driving from a point on the highway 500 feet east from the crossing down to a point about 102 feet east, and that then the view was obstructed until a point 40 feet east from the crossing was reached.

There was also testimony on behalf of the defendant that the signals of the approach of the train to the crossing were given, both by bell and by whistle; and that the train was going from 25 to 30 miles per hour. There was also testimony tending to contradict the testimony of plaintiff's witnesses as to the presence of ice in the road.

[1] The ground upon which the trial court directed a verdict for the defendant was that

8 F.(2d)—9

the negligence of the railroad company, even conceding that it existed, was not the proximate cause of the accident. We think this ruling was correct.

What constitutes proximate cause has been stated by this court a number of times, and recently in Mendelson v. Davis, 281 F. 18, 21:

"In order to find that negligence is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence. If a new force intervened between the negligent act and the injury, sufficient of itself to cause the injury, the negligent act is too remote to warrant a recovery. Scheffer v. Washington City, etc., R. Co., 105 U. S. 249, 26 L. Ed. 1070; Empire State Cattle Co. v. Atchison, etc., Ry. Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70; Teis v. Smuggler Mining Co., 158 F. 260, 85 C. C. A. 478, 15 L. R. A. (N. S.) 893; Ketterer v. Armour & Co., 247 F. 921, 160 C. C. A. 111, L. R. A. 1918D 798."

In Davis v. Schroeder, 291 F. 47, 49, 50, this court said:

"Not all negligence is actionable. It is only so when the injury or the loss is the proximate result thereof. The proximate result must be the natural and probable consequence, which ought to have been foreseen or reasonably anticipated in the light of the attendant circumstances. That is the rule laid down by this and other courts, with some slight variance in the language by which the thought is expressed. From these citations the clear rule is apparent that an injury that could not have been reasonably anticipated by a person of ordinary prudence and intelligence as the probable result of the act of negligence is not actionable; nor is such injury actionable if it would not have resulted from the alleged negligence, but for the interposition of some new and independent cause that could not have been reasonably anticipated."

See, also, Stahl v. L. S. & M. S. Ry. Co., 117 Mich. 273, 75 N. W. 629; Keel v. S. A. L. Ry. Co., 122 S. C. 17, 114 S. E. 761.

Assuming the truth of the testimony for the plaintiff as to the presence of ice in the highway, we are of the opinion that the ice and not the negligence of the defendant was the proximate cause of the accident. When the plaintiff was at least 20 feet from the crossing, he admittedly became aware of the approaching train. He then had ample time to stop the automobile. He testified, "I saw the train coming in time to have

stopped the car if it had not been for the ice." Again, "There is no question in my mind but that when I first saw the train I had sufficient distance in which to stop the car and avoid the accident but for the ice." And again, "but for the ice * * * I could have stopped that car in 8 or 9 feet."

It is claimed on behalf of the plaintiff that, if the usual signals had been given, he would not have driven the automobile so near the crossing as 20 feet before applying the brakes. Whether this claim is anything more than an afterthought may be open to doubt. There was no testimony showing how far from the railroad track plaintiff would have tried to stop if he had heard any signals from the approaching train. Furthermore, it is pure speculation whether, if the brakes had been applied at a distance from the crossing of 30 to 40 feet, the accident would not have happened just the same. There is no evidence in the record that the condition of the road 30 or 40 feet from the crossing was any different from the condition within the 20-foot limit. If the usual signals had been given by those in charge of the train, and if the brakes had been applied to the automobile when at a distance of 30 or 40 feet from the crossing, yet, if the icy condition which plaintiff claims existed within the 20-foot limit extended as far back as 30 or 40 feet, the accident might very likely have happened, notwithstanding the attempt to stop the automobile 30 or 40 feet from the track.

Such being the facts disclosed by the record, we hold that within the rules announced in the foregoing cases, the failure by defendant to give customary signals when the train was approaching the crossing, if such failure in fact existed, was not the proximate cause of the accident. The case of Barrett v. U. S. Railroad Administration, 196 Iowa, 1143, 194 N. W. 222, is very closely parallel with the case at bar. In that case the court said:

"As plaintiff approached the side track crossing, she had the train and its schedule in mind and reduced the speed of her auto for that reason, so that she had it apparently in perfect control. It would have been a perfect control were it not for the icy condition of the ground at that place and her ignorance thereof. She had no intention of crossing the main line without first looking to the west for a train. She had all the time a clear view to the east and knew that no train was approaching from that direction. She did look to the west immediately and did discover the train. She was 40 feet away and mentally ready to stop her car. The icy surface and the skidding of the car were conditions which she had not foreseen or contemplated. These were the conditions which exposed her to the collision. * * * Can we assume, or could the jury assume, that, if the signals had been given, she would have stopped her car farther away than 40 feet? Why should she do so?' If conditions had been in fact as she supposed them to be, she could readily, and would have, stopped her car after crossing the side track. Would it have been less prudent for her to stop her car 40 feet away from the track than to stop it 60 or 80 feet away therefrom? If she were riding in a horse-drawn vehicle and were driving a timid or fractious horse, prudence would suggest that she should stop far enough away to avoid the risk of frightening her horse; but no such reason of prudence obtains in the use of inanimate horse power."

It was held that a nonsuit should have been directed.

[2] There is another reason why plaintiff's claim that he was lured into danger cannot be sustained. Plaintiff had timely notice of the approach of the train long before he came to the 20-foot point, or might have had such notice if he had used ordinary care. This is clearly demonstrated by the evidence.

The duty of a traveler on a highway when approaching a railroad crossing has often been stated by this court. Bradley v. Mo. Pac. R. Co., 288 F. 484; Noble v. C. M. & St. P. Ry. Co., 298 F. 381; C. M. & St. P. Ry. Co. v. Bennett, 181 F. 799, 104 C. C. A. 309; N. P. Ry. Co. v. Tripp, 220 F. 286, 136 C. C. A. 302; C. G. W. R. Co. v. Biwer, 266 F. 965. In the Bennett Case, supra, Judge Sanborn speaking for the court, said:

"A railroad track is a constant warning of danger. The engines and trains must run over them so rapidly that their operators cannot alone protect travelers on the highways which cross them. The law requires railroad companies to sound their whistles and ring their bells as their trains approach the crossings, and it also requires travelers on the highways to exercise ordinary care to use efficiently their senses of sight and hearing to prevent collisions. The failure of the servants of the companies to discharge their duties in this regard is no excuse for the failure of travelers on a highway to discharge theirs. The latter are still bound by the law to listen and look effectively before they enter upon a railroad track. * * * It is no more the exercise of ordinary care

to look and listen when and where looking and listening are useless than it is to fail to look and listen where looking and listening would be effective."

Plaintiff testified that he met this duty by looking and listening. He testified that he was looking when at a distance of 400 to 500 feet from the crossing, and continued to look until he reached a point 175 feet from the crossing.

[3] It must be conceded that, on the motion by defendant for a directed verdict, plaintiff was entitled to have taken in his behalf the most favorable view of the testimony. He was not entitled, however, to have credence given to testimony if it conflicted with plain physical facts. His claim that he looked at a certain point, and that no train was in sight, will not be given credence if the mathematical facts in the testimony given in his own behalf demonstrate the unsoundness of his claim. Rich v. C. M. & St. P. Ry. Co., 149 F. 79, 85, 78 C. C. A. 663 (C. C. A. 8); C., B. & Q. R. Co. v. Munger, 168 F. 690, 692, 94 C. C. A. 176 (C. C. A. 8); St. L., etc., R. Co. v. Cundieff, 171 F. 319, 325, 96 C. C. A. 211 (C. C. A. 8); Erie R. Co. v. Hurlburt, 221 F. 907, 910, 137 C. C. A. 477; Atchison, etc., Ry. Co. v. McNulty, 285 F. 97, 101 (C. C. A. 8); Wabash Ry. Co. v. Huelsmann, 290 F. 165 (C. C. A. 8).

It is admitted that at a point 175 feet east of the crossing a person in an automobile on the highway could see a train coming toward the crossing 1,400 to 1,600 feet north of the crossing. Plaintiff testified that while traveling this 175 feet, he was going part of the time 10 miles per hour and part of the time 8 miles per hour. If the automobile went the whole 175 feet at 10 miles per hour, it would have taken 12 seconds to reach the crossing. If it went 8 miles per hour, it would have taken 15 seconds. It therefore took somewhere from 12 to 15 seconds in traveling the distance of 175 feet. The railroad train going at 45 miles per hour, the rate of speed testified to by plaintiff's own witness, in 12 seconds would have traveled 792 feet; in 15 seconds 990 feet. It is therefore apparent that the train was in plain view from the 175-foot point on the highway at the time when, according to plaintiff's testimony, he looked from that point. It is further apparent from the foregoing figures that the train was in plain view for some considerable space of time while the automobile was traveling from a point 400 feet east from the crossing to the point 175 feet east from the crossing. The con-

clusion is irresistible either that plaintiff did not look with ordinary care while he was between the points mentioned, or that he did see the train. In either event he is not in a position to avail himself of the claim that he was entitled to notice by the defendant of the approach of the train, and that he was lured into danger for want of such notice. If he had notice by any means of the approach of the train, he could not recover for the negligence of the defendant in failing to give the customary signals.

We have examined the cases relied upon by plaintiff to sustain his claim that he was lured into a place of danger, but it would serve no useful purpose to review them in detail. It is sufficient to say that they can all be distinguished from the case at bar. Many of them are cases involving vehicles drawn by horses. For obvious reasons such cases have little or no application to cases involving automobiles. Others are cases where the person injured was induced to go upon the railroad track by the negligent failure of the company to give the usual signals. There was no such inducement to the plaintiff in the case at bar.

Judgment affirmed.