## NOBLE v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1924.)

No. 6373.

1. **Railroads ⬅️327(8)—Automobile driver held negligent.**

    Automobile driver, familiar with crossing, who could by proper exercise of his senses have seen or heard train at sufficient distance to enable him to stop and avoid accident, was negligent in either continuing with knowledge of approaching train or in failing to look or listen, notwithstanding obstructions of view of approaching train at other points, in course of his approach to track.

2. **Negligence ⬅️93(1)—Automobile driver's negligence not imputable to passenger.**

    The negligence of an automobile driver is not always or necessarily imputable to passenger.

3. **Railroads ⬅️327(12)—Occupant of automobile, who could have seen train on approach of crossing in time to have warned driver, held contributorily negligent.**

    Occupant of automobile, who had better opportunity than driver to observe train on approach of crossing, and could have seen train in sufficient time to warn driver to avoid accident, *held* negligent as a matter of law.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit by Mrs. Grace Noble against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Van Slyke & Agor, of Aberdeen, S. D., for plaintiff in error.

Ed. L. Grantham and H. O. Hepperle, both of Aberdeen, S. D., for defendant in error.

Before LEWIS, Circuit Judge, and SYMES and PHILLIPS, District Judges.

SYMES, District Judge. The plaintiff, Mrs. Grace Noble, sues to recover damages for injuries suffered as a result of an accident occurring while riding in an automobile with her husband on a public highway. The car was struck by a train at a grade crossing on the main line of the defendant company near the town of Java, S. D. At the end of her case the court, on motion of the defendant, directed a verdict in its favor, and gave judgment for defendant thereon. The three

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

assignments of error deal only with the correctness of this ruling, and it is the only question before us.

The road upon which Mrs. Noble was traveling at the time of the accident runs straight north a considerable distance to the railroad track, which it crosses at right angles. The track running easterly from the intersection soon enters a cut, and at a point about 500 feet or a little more curves to the southeast. The road slopes down to the railroad track from a point half a mile south thereof. Immediately adjacent to the track it is 6 or 7 feet below the railroad grade, and finally rises again to reach the track. The accident occurred about 5 o'clock in the afternoon of October 30, 1921. The day was clear, with no wind. Mrs. Noble was riding in the front seat of the car, on the right side of her husband, who was driving. They were both more or less familiar with the road and the crossing. It is undisputed that she was on the side from which the train approached and that there were no curtains to obstruct her view, or that of her husband. She testifies that they drove up to the track at about 15 miles an hour, looking both ways for a train, but that she did not see any or hear any noise or whistle. She says the first she saw of the train was when they started up the incline onto the track, and that they could not have been at that time more than 16 feet away. She exclaimed, "Oh! there is the train!" whereupon her husband tried to reverse the gear, but only succeeded in stopping the car with the front wheel on the first track, when they were struck by the train. The car was knocked a considerable distance, and plaintiff rendered temporarily unconscious. She states that, by reason of the track passing through the cut and the curve, it is impossible to see a train approaching from the east until one is a comparatively short distance from the crossing. She further testifies that her husband put on a little more gas in order to make the elevation to the track at a point only a few feet therefrom, and it was at that time that she first saw the train coming from the east. She noticed the usual railroad crossing sign: "Railroad Crossing. Look Out for the Cars."

Her husband, Phillip Noble, testifies that the car was in good condition at the time and they approached the crossing at the rate of 15 miles an hour. Coming down the long slope of the road to the track, the view of the latter to the east is obstructed by the banks of the cut, through which the track runs. He claims to have maintained a strict lookout, but did not see or hear anything that would indicate the approach of a train, and that he continued to drive on until he was 15 or 16 feet south of the track. At this point he started to put on a little more gas to make the elevation, and the car was just beginning to pick up speed, when his wife exclaimed, "There is a train!" whereupon he devoted his efforts to stopping and reversing the car. They were struck just as the front wheel was exactly on the first rail; that he himself "didn't see any train until the pilot of that engine hit the front wheel," and had not heard it before that. Other witnesses for the plaintiff, familiar with the scene, testify that from a point on the road at least 50 feet south of the crossing a train approaching from the east could be seen 250 to 400 feet away.

The plaintiff, on being recalled, stated that they slowed down to 5 miles an hour and the automobile was just moving until they reached the point 16 feet from the track, where it was necessary to accelerate to make the last grade. Her husband, on being recalled, stated that, when they were about 50 or 60 feet from the track, he looked both ways, saw no train, and he "stepped on the gas"; that at that point one could see an engine coming down that track from the east 250 or 260 feet away from the crossing.

Certain exhibits in the record consist of photographs. One, taken at a point 180 feet south of the crossing on the road at an elevation of 5 feet, shows the top of a train approaching from the east, and another, taken 45 feet south, shows a train also approaching from the east at a distance of over three telegraph pole spaces along the track from the crossing. These photographs show that the train in question was visible to a traveler on this road leading to the crossing at a point 400 feet east therefrom. Plaintiff claims that the train in question was going at the rate of 40 miles an hour and that no whistle was blown or bell rung.

[1] It is clear that, if the plaintiff was guilty of contributory negligence, no recovery can be had, irrespective of the manner in which the defendant operated this particular train or protected the crossing. The undisputed facts show that the driver of the car had full opportunity to observe all surrounding conditions at the time of the accident, with which he was already more or less familiar, and could, by the proper and intelligent exercise of his senses, have seen or heard a train approaching from the east at 40 miles an hour, at a sufficient distance to enable him to stop his car and avoid an accident. This is especially true in this case, if, as he states, he approached the track at the rate of 5 miles an hour and had an upgrade to aid him in bringing the car to a standstill. Instead of this, he testifies that he was increasing the speed of his car just before he was struck. The facts force the conclusion that there was at least one effective point in the course of his approach to the track at which he could have seen and heard the train and stopped in time to avoid an accident. If he did do this, he must have seen the train, and was guilty of gross recklessness in continuing on. If he did not, he was guilty of gross carelessness in failing to look or listen for the train. Under either alternative, he was guilty of contributory negligence, which absolves the defendant from any liability as to him. This is the settled law in this circuit. Davis v. Chicago, Rock Island & Pacific Ry. Co., 159 Fed. 10, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424; Wabash Railway Co. v. Huelsmann (C. C. A.) 290 Fed. 165; Bradley v. Missouri Pacific Railroad Co. (C. C. A.) 288 Fed. 484, and cases cited, are a few of the many cases so holding.

The plaintiff claims that these cases are not in point, because the undisputed evidence shows that the plaintiff herself looked and listened at a time and place where she would be justified in believing that she could see and hear an approaching train in ample time to stop, but, because of the peculiar nature of the obstructions that existed in this case, the train was out of sight at the time she looked, and that because of the extraordinary nature of the train itself it made no noise as it

approached. A state of facts so unusual might be imagined, and require a decision by a jury as to whether the person injured had been guilty of contributory negligence; but such is not the instant case. If the view was obstructed at the time the plaintiff looked, she was not looking at an effective point, and the record shows that there was such a point.

[2, 3] The negligence of the driver of a car is not always, or necessarily, imputable to the passenger; but, outside the conduct of her husband, we think, on this record, that the plaintiff was equally guilty of contributory negligence. Admittedly she had a better opportunity than her husband to observe the train and in sufficient time to warn him. This she did not do, and is therefore guilty of contributory negligence as a matter of law. Bradley v. Missouri Pacific Railroad Co., supra; Atchison, Topeka & Santa Fé Ry. Co. v. McNulty (C. C. A.) 285 Fed. 97. It may be that the lower court in its opinion gave the so-called "stop, look, and listen" rule a more drastic interpretation than was necessary or the decisions of this court warrant. In view of all the circumstances, however, it is not necessary to pass on that.

In our opinion the directed verdict was proper; the judgment should be affirmed. And it is so ordered.