## KUTCHMA v. ATCHISON, T. & S. F. RY. CO.

### HASKELL v. SAME.

Circuit Court of Appeals, Eighth Circuit.
November 23, 1927.

Nos. 7865, 7866.

1. **Railroads** ⟬⟭327(12)—Occupants of motor truck struck by train at crossing held guilty of contributory negligence in failing to look and listen.

Plaintiffs, who, while riding in a motor truck, were struck by a train, and injured at a crossing in the daytime, *held* barred from recovery by contributory negligence, where, from a point 34 feet from the center of the crossing as they approached, there was an uninterrupted view of the track in the direction from which the train came for 900 feet.

2. **Railroads** ⟬⟭327(8)—One approaching crossing must look and listen, where and when his senses will give notice of approaching trains.

A traveler, approaching a railroad crossing, must look and listen at places and at times where and when his senses will give notice of approaching trains; and if he fails to do so, and is injured on a crossing by a train whose approach he might have discovered by a reasonable use of his senses, such failure is negligence contributing to his injury, and for that reason his right of recovery is barred.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Actions at law by Joseph Kutchma and by Frank J. Haskell against the Atchison, Topeka & Santa Fé Railway Company. Judgments for defendant, and plaintiffs each bring error. Affirmed.

Leon H. Snyder, of Colorado Springs, Colo., and Kenaz Huffman, of Denver, Colo.

(Frank E. Gove and John H. Schultz, both of Denver, Colo., on the brief), for plaintiffs in error.

Erl H. Ellis, of Denver, Colo. (E. E. McInnis, of Oklahoma City, Okl., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. These actions were brought to recover damages for personal injuries to the two plaintiffs inflicted at a grade crossing by collision of defendant's train with a motor truck in which they were riding. The cases were consolidated for trial. The court after each side had introduced its proof directed the jury to return verdicts in favor of defendant, on the ground that the contributory negligence of plaintiffs plead in the answer contributed directly to the injuries to them, and they 'have brought the record here on writs of error to review that ruling, complaining that it was error.

[1] The crossing was at the Pikeview coal mine a few miles north of Colorado Springs. The railroad runs north and south and there is a public highway along the railway on its east side. From this highway those going to the mine cross first the main line of the railway and then four switch tracks leading to the mine, which is on the west side of the railway. Returning from the mine to the highway the switch tracks are crossed first, of course, then the main track. In the forenoon of December 15, 1925, plaintiffs, who were experienced coal miners, walked out to the mine from Colorado Springs to obtain employment. Their services were not needed. In going out they did not cross the tracks on the traveled way. While they were at the mine John Kessler's motor truck was loaded with coal at the mine tipple, and being ready to go he invited the plaintiffs to ride with him. They got in, all sitting side by side on the one seat,—Kessler on the left, Kutchma on the right, and Haskell between them. There was a cab or hood over the seat with curtained doors having isinglass windows in them. They started on the traveled way over the crossing to the east and passed safely over the four switch tracks, but just as the motor truck reached the main track defendant's train coming from the north struck it, dragged it several hundred feet and both plaintiffs were seriously and permanently injured and crippled. As one starts to the east over the crossing the four switch tracks and the main track are in plain view and

there is a plain danger sign of warning at the crossing.

Plaintiffs alleged in their complaints that the crossing was a dangerous one, that box cars stood on the side tracks, that the tipple, which stood 322½ feet north of the crossing, extended over the side tracks and near to the main track, obstructing the view, that defendant was negligent in not providing signals or other means of warning travelers of the approach of trains, that on this occasion the whistle and bell on the engine of the approaching train were not sounded, and that the train was running at high speed. They testified that they did not see the danger sign, were not familiar with the crossing, had never been there before; that when they started over the switch tracks the view was obstructed by box cars on some of them, but they looked for approaching cars or trains, Haskell looking most of the time to the south and Kutchma on his side to the north, and they did not see or hear the train until it was right on them; that they did not hear a bell or whistle until an instant before the collision. Other witnesses corroborated them,—that they did not hear the engine whistle or the bell until just before the crash, when the whistle gave two short blasts. The engineer, fireman and an express messenger on the train testified that the engine whistled for the crossing when it was 900 to 1,000 feet away; that the bell was then set ringing automatically and continued to ring until the train stopped after the collision. Mr. Shoemaker, who was in a bunk house a little northeast of the crossing and about 100 yards east of the highway on the east side of the main line, testified that he heard the train whistle for the crossing while he was washing his hands, it gave two long and two short blasts, that when he heard it he took the towel and faced the window and was sitting there looking out of the window when the engine came into view, that the engine then gave a very shrill warning whistle just before the collision. He did not hear the bell, but after the engine came in view he could see the bell in motion. When he first saw the engine it was due west of him and a little south of the tipple. The plaintiffs and their witnesses estimated the speed of the train at 50 to 60 miles per hour, while those for defendant at 30 to 40 miles per hour. The train men testified that to be the usual speed over that track. Some of the plaintiffs' witnesses who testified they did not hear the whistle for the crossing or the bell were standing not far from the tipple, and it made quite a bit of noise. On the proof it may be

seriously questioned whether the plaintiffs sustained the burden of showing any negligence at all on the part of defendant.

But we come to the point on which the court acted in directing verdicts,—plaintiffs' contributory negligence. The distance from the west rail of the main line to the east rail of the first switch track was 28.7 feet, to the next switch track 46.6 feet, to the next 60 feet, and to the fourth switch track 73.7 feet. Mr. Jolly, a civil engineer, testified for plaintiffs that as a result of his observations at the crossing one standing in the traveled way 31 feet to the west from the center line of the main track obtains a view approximately 900 feet up the main line to the north, looking east of the tipple and west of the telegraph and telephone poles along the track. He made no further observations west of that point because when he was there there was a box car close to the road on the first switch track. Photographs of the locality corroborate Mr. Jolly and show the unobstructed view of the track north from the point at which he looked. There was no testimony that box cars stood on the first switch track west of the main line and north of the road crossing so as to obstruct the view in that direction on the day of the accident. There was proof that there were some box cars standing on the second switch track from the main line. Mr. Rehm, a civil engineer, testified for defendant that at a point 34 feet west from the center of the main line and in the roadway, which would be the center line of the first switch track, a man could be seen standing on the main line to the north a distance of 894 feet from the crossing. Other points of observation were given of a view north of the main line before reaching it.

While it is true that Kutchma and Haskell had never before been to this locality and had never passed over this crossing, they had a complete view of the situation when they started over these tracks in Kessler's truck. They knew it was a railroad crossing and they each testified that he was on the lookout for cars or trains that might be coming from either north or south. We have had many of these cases, presenting deplorable accidents, and the rules of law controlling in such a situation have been many times stated. In C., M. & St. P. Ry. Co. v. Bennett, 181 F. 799, 803, we said:

"A railroad track is a constant warning of danger. The engines and trains must run over them so rapidly that their operators cannot alone protect travelers on the highways which cross them. The law requires railroad

companies to sound their whistles and ring their bells as their trains approach the crossings, and it also requires travelers on the highways to exercise ordinary care to use efficiently their senses of sight and hearing to prevent collisions. The failure of the servants of the companies to discharge their duties in this regard is no excuse for the failure of travelers on a highway to discharge theirs. The latter are still bound by the law to listen and look effectively before they enter upon a railroad track. Chicago, R. I. & P. Railroad Co. v. Houston, 95 U. S. 697, 702, 24 L. Ed. 542; Schofield v. Chicago, etc., Ry., 114 U. S. 615, 618, 5 S. Ct. 1125, 29 L. Ed. 224; Fletcher v. Atlantic & Pacific R. R. Co., 64 Mo. 484."

[2] There are many other cases in this circuit applying the rule that a traveler approaching these known places of danger must look and listen at places and at times where and when his senses will give notice of approaching trains; and if he fails to do so and is injured. on the crossing by a train whose approach he might have discovered by a reasonable use of his senses, such failure is negligence on his part contributing to the infliction of the injuries which he receives and for that reason his right of recovery is barred. Parramore v. Denver & R. G. W. R. Co. (C. C. A.) 5 F. (2d) 912; Hickey v. Mo. Pac. R. R. Co. (C. C. A.) 8 F.(2d) 128; Bradley v. Mo. Pac. R. R. Co. (C. C. A.) 288 F. 484; A. T. & S. F. Ry. Co. v. McNulty (C. C. A.) 285 F. 97; Noble v. C., M. & St. P. Ry. Co. (C. C. A.) 298 F. 381. Other cases upholding the rule are cited in those just named. To listen only when one cannot hear an approaching train because other noises obstruct the sense of hearing, and to look only where the view of the approaching train is obstructed, is as careless and neglectful of duty as to not listen or look at all. In the opinion of the Supreme Court delivered October 31, 1927, in the case of B. & O. R. R. Co. v. Goodman, 48 S. Ct. 24, 72 L. Ed. ——, it appears that Goodman drove his automobile truck on the railway track and was there killed by a train running at the rate of sixty miles an hour. His personal representative sued to recover and obtained judgment, which the Supreme Court reversed. The court said:

"When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train and not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk."

In that case it was the plaintiff's claim that a section house 243 feet north of the crossing obstructed the view until Goodman was about 20 feet from the first rail, or, counting his position in the truck, 12 feet from danger, and that then the engine was still obscured by the section house. The plaintiffs in this case testified that they could see through the isinglass windows on the side of the hood over the seat, and that they looked both ways for approaching trains and saw none. It is obvious from the testimony and the photographic exhibits of the locality that there were points before they reached the main track at which the approaching train could have been seen in ample time to have prevented the collision. They did not look to the north at those points else they would have seen the train, and if they only looked at points where their vision was obstructed it was their duty to take other means of precaution. They were negligent in not doing so.

The judgments are affirmed.