574

**MILLER v. UNION PAC. R. CO.**
No. 9554.

Circuit Court of Appeals, Eighth Circuit.

Feb. 17, 1933.

Rehearing Denied March 24, 1933.

Martin J. O'Donnell, of Kansas City, Mo. (George H. Kelly and William Buchholz, both of Kansas City, Mo., on the brief), for appellant.

C. V. Garnett, of Kansas City, Mo. (T. M. Lillard and Bruce Hurd, both of Topeka, Kan., and Charles E. Whittaker and Watson, Ess, Groner, Barnett & Whittaker, all of Kansas City, Mo., on the brief), for appellee.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

This is an action for damages for death by wrongful act. Plaintiff's intestates, Marcus Andlauer and Ellanore Andlauer, husband and wife, were killed on a railroad crossing near St. Marys, Kan., December 11, 1927. It is charged in the petition that the defendant railroad company was negligent in operating its train at an excessive speed; that the trainmen failed to sound the crossing whistle; that they failed to warn plaintiff's intestates, or slacken the speed of the train after they knew, or could have known, of their peril. Defendant's answer is in effect a general denial and a plea of contributory negligence.

At the place where the accident occurred, defendant's railway track runs east and west, while Highway No. 40 runs in the same direction, but to the south of and parallel with the railway track for some considerable distance. St. Marys College is located north of the railway tracks, the grounds of which are entered from Highway No. 40 by means of a road leading north from the main highway and crossing the railway track. The distance from the north edge of the highway to the south rail of the track is 71½ feet. This railway crossing was marked by the standard railway crossing sign, located 17 feet south of the south rail, at the east edge of the highway as it passed north at right angles from Highway No. 40. The contour of the ground is generally level, so that an occupant of an automobile turning north from the main highway toward the railway crossing onto the highway leading toward the entrance of the college grounds, has an unobstructed view of a railroad train approaching from the east for a distance of more than 2,000 feet.

The Andlauers were traveling west on Highway No. 40, in a closed automobile, intending to drive into St. Marys College grounds; their son being a student at the college. After turning north, leaving Highway No. 40, and as they passed onto the rail-

way crossing, they were struck by a west-bound passenger train and almost instantly killed.

The accident occurred about 3:30 in the afternoon, on a clear day. Andlauer and his wife were both familiar with the crossing. As they turned north, approaching the crossing, they were traveling at a speed estimated at from twelve to fifteen miles an hour, and did not slacken nor increase that speed, so far as the record shows. There was evidence that the train was traveling from fifty to sixty miles an hour, and there was testimony of two witnesses to the effect that they did not hear the crossing whistle sounded. There was also evidence that the train was about an hour late, and that it usually slowed down to from twenty-five to thirty miles an hour in passing by the St. Marys College property.

St. Marys is a town of about 1,200 inhabitants, and there is a student body at the college of from 500 to 1,000 students, and a faculty of about 100, all of whom, we assume, lived on the campus in dormitories, although that is not very clear from the record. An ordinance of the city of St. Marys limits the speed of trains within the city limits to twenty miles an hour, fixing as a penalty for the violation of the ordinance a fine of not less than $25, nor more than $100.

When the plaintiff rested, defendant interposed a motion for a directed verdict, moving in the alternative for a directed verdict or a dismissal upon the merits. The court granted defendant's motion in the alternative, and dismissed the petition on its merits. To this action of the court plaintiff excepted "for the reason that under the pleadings and the evidence the plaintiff was entitled to recover and was entitled to have the cause submitted to the jury." The exception was allowed, and the case has been removed to this court by appeal.

In effect the negligence charged is: (1) Failure to sound any warning of the approach of the train, either by the ringing of a bell or the sounding of a whistle, after knowledge that the automobile in which the Andlauers were riding was approaching a position of peril; (2) failure to observe a custom theretofore observed by it, to slow down its trains when passing St. Marys College and entering the city limits of St. Marys; and (3) failure to ring any bell or sound any whistle within eighty rods of the crossing. It is the contention of plaintiff that he was entitled to go to the jury on each of these issues.

Defendant contends that: (1) The evidence was insufficient to raise an issue as to the allegations of primary negligence; (2) that plaintiff's intestates were guilty of such contributory negligence as precludes recovery; and (3) that the doctrine of discovered peril or last clear chance was not applicable because there was no evidence that the defendant's employees discovered the peril in time to have avoided the accident.

In our view of the case it is not necessary to consider the debated question as to whether there was sufficient evidence of primary negligence to entitle plaintiff to have that issue submitted to the jury, because it seems clear, under the undisputed evidence, that Mr. and Mrs. Andlauer were both guilty of contributory negligence. We therefore assume, without deciding, that the evidence on the question of primary negligence was such as to entitle plaintiff to have had that issue submitted to the jury. As has been observed, the accident occurred in broad daylight, on a clear afternoon. The view toward the east was unobstructed, and had either of the occupants of the car looked toward the east as they approached this crossing, he could not but have seen the approaching train. It appears that the car in which the Andlauers were riding, was traveling at a speed of from ten to twelve miles an hour from the time it left the main highway and approached the crossing, and during that time the speed neither decreased nor increased; the car neither stopped nor turned aside. These are undisputed physical facts. It was their duty to look and listen as they approached this crossing, at such time and place as looking and listening would be effective. This crossing was a point of danger, with which they were both familiar. Certainly, the contributory negligence of the driver cannot be denied.

It is argued, however, that the negligence of the driver should not be imputed to Mrs. Andlauer, as she was a mere passenger or guest. We need not determine whether, under the facts and circumstances disclosed by this record, the negligence of Mr. Andlauer should be imputed to his wife, because this court has consistently held to the rule that it is the duty of one riding in an automobile, even though he is not the driver, to keep a lookout at railway crossings and give warning to the driver. Bradley v. Missouri Pacific R. Co. (C. C. A. 8) 288 F. 484, 495; Noble v. Chicago, M. & St. P. R. Co. (C. C. A. 8) 298 F. 381, 384; Chicago & E. I. R. Co. v. Sellars (C. C. A. 8) 5 F.(2d) 31; Kutchma v. Atchison, T. & S. F. R. Co. (C. C. A. 8) 23 F.(2d) 183; Parramore v. Denver, & R. G. W. R. Co. (C. C. A. 8) 5 F.(2d)

912. See, also: Summers v. Denver Tramway Corp. (C. C. A. 10) 43 F.(2d) 286; Garrett v. Pennsylvania R. Co. (C. C. A. 7) 47 F.(2d) 10.

In Bradley v. Missouri Pacific R. Co., supra, the facts were very similar to those in the instant case. In that case Mr. Bradley was riding in an automobile driven by a Mr. Brown. At a point 40 feet east of the railway crossing the approaching train was visible for a distanct of 800 feet. Both occupants of the car were killed, and there was no direct testimony as to the care exercised either by the driver or by Mr. Bradley. Both, as in the case at bar, were familiar with the crossing. This court held that Bradley, even though merely a guest, was conclusively shown by the record to have been guilty of contributory negligence. In the course of the opinion by Judge Kenyon it is said: "Here the hazard was brought about as much by Bradley's negligence as by Brown's. We think the question of contributory negligence here was one of law for the court, as the evidence relating thereto was undisputed, and but one conclusion can be drawn therefrom by reasonable minds, and that is that Bradley was guilty of contributory negligence, and the court would have been justified in so holding as a matter of law."

The doctrine of the Bradley Case was reaffirmed by this court in Noble v. Chicago, M. & St. P. R. Co., supra. In that case, which involved the question of contributory negligence of a passenger, it is said: "The negligence of the driver of a car is not always, or necessarily, imputable to the passenger; but, outside the conduct of her husband, we think, on this record, that the plaintiff was equally guilty of contributory negligence. Admittedly she had a better opportunity than her husband to observe the train and in sufficient time to warn him. This she did not do, and is therefore guilty of contributory negligence as a matter of law."

 Referring again to the facts in the instant case, it is observed that when the car turned north, approaching the crossing, it was 71½ feet from the south rail. Mrs. Andlauer was on the right side, in the front seat, and, as in the Noble Case, had a better opportunity of observing the approaching train than her husband, who was at the wheel. But it is argued that in the absence of evidence, we must presume that she was in the exercise of reasonable care. If so, we should presume that she looked, and, of course, if she looked, she must have discovered the approaching train. If we may pursue the line of presumption further, in violation of the rule that one presumption cannot be based upon another presumption, we should presume that she warned her husband. Then there is a presumption that he exercised ordinary care. There are two answers to the argument based upon presumption: First, one presumption cannot be based upon another presumption. Brady v. United States (C. C. A. 8) 24 F. (2d) 399; General Reinsurance Corp. v. Southern Surety Co. (C. C. A. 8) 27 F.(2d) 265; Lincoln National Life Ins. Co. v. Erickson (C. C. A. 8) 42 F.(2d) 997. Second, a presumption cannot be weighed as against evidence, and does not constitute affirmative proof. In the absence of evidence, a presumption of fact may prevail. It takes the place of evidence; but when there is evidence on an issue, presumption as to that issue disappears. United States v. Le Duc (C. C. A. 8) 48 F.(2d) 789; Guaranty Trust Co. v. Minneapolis & St. L. R. Co. (C. C. A. 8) 36 F.(2d) 747; Fidelity & Casualty Co. v. Niemann (C. C. A. 8) 47 F.(2d) 1056.

Here, the physical facts and surrounding circumstances, all practically undisputed, would seem conclusively to show that the occupants of this car, heedlessly, and without looking or listening, drove onto this crossing without any knowledge of the approach of the train. They knew that they were approaching the crossing; they knew exactly where they were and where the crossing was. They had an unobstructed view of the approaching train, yet the car neither stopped, slackened its speed, increased its speed, nor turned to the right nor to the left, but went steadily forward. These physical facts and surrounding circumstances overcome all presumption as to the exercise of ordinary care, and conclusively establish that both the occupants of this car were guilty of contributory negligence, unless, as contended by appellant, the doctrine of discovered peril can be invoked.

 It is argued that the defendant's employees in charge of the train, in the exercise of ordinary care, should have discovered the peril of plaintiff's intestates in time to have averted the accident. There are at least two answers to this contention: First, the evidence is not such as to charge the employees in charge of the train, with knowledge that the Andlauers were intending to drive onto this crossing. Certainly, until the car turned north toward the crossing, the employees were not charged with knowledge of their presence. They were warranted in assuming that these people would exercise ordinary

care, that they knew they were approaching a crossing, and that the train was approaching a crossing. With this knowledge, they may well have assumed that the automobile would be stopped before it passed onto the crossing. If employees of the railroad company could not so assume, then it would be necessary to stop the train at every highway crossing, wherever situate, or to approach it at such a speed as to be able to stop the train whenever the train crew observed any one approaching a crossing. If this train were going at as high a rate of speed as contended, it certainly could not have been stopped within several hundred feet; whereas, the automobile, traveling at a speed of from twelve to fifteen miles an hour, could have been stopped almost instantly. Second, the doctrine of discovered peril or last clear chance is not applicable because there is no proof that the employees operating the train had knowledge of the peril. This court has consistently held that such knowledge must be actual. It is bottomed on the theory that after the actual discovery of a person in peril, there is time within which, by the exercise of ordinary care, to avoid the injury. In the instant case, there is no evidence that the employees actually discovered decedents' peril. Certainly, there is no evidence that they discovered such peril in time to have avoided the accident. Marshall v. Hines (C. C. A. 8) 271 F. 165, 170; Miller v. Canadian Northern R. Co. (C. C. A. 8) 281 F. 664; Wheelock v. Clay (C. C. A. 8) 13 F.(2d) 972; Walker v. East St. Louis & S. Ry. Co. (C. C. A. 8) 25 F.(2d) 579; Kinney v. Chicago Great Western R. Co. (C. C. A. 8) 17 F.(2d) 708.

In Marshall v. Hines, supra, this court said: "The plaintiff's definition of the last clear chance doctrine is too broad and erroneous. The exception it presents is limited to cases in which the defendant actually discovers the person injured and his peril in time to avoid the injury. It does not include cases where, by the exercise of ordinary care, the plaintiff might have made such a discovery in time to avoid the injury."

In the instant case, the railroad company produced no testimony and there was no evidence that the engineer or fireman, or any other employees in charge of the train, discovered the Andlauers or their peril before they were injured, and hence the exception to the rule of contributory negligence cannot be invoked.

It is finally urged that the court erred in granting the alternative motion to dismiss the case, instead of directing a verdict. When defendant's motion was submitted, no objection was made to its form, and in the exception taken by plaintiff to the action of the court granting the motion, no complaint was made that the procedure invoked was objectionable. Had such an objection or exception been taken at the time, the procedure could readily have been cured. The objection is purely technical and could not possibly have prejudiced the plaintiff. What is said by this court in Bowman v. Atchison, T. & S. F. R. Co. (C. C. A. 8) 184 F. 697, 699, is here apposite. It is there said: "The court sustained the motion for a directed verdict and added: 'Enter judgment for the defendant as on the verdict of the jury.' No verdict of the jury appears in the record, and the fair inference is the court dispensed with one. The plaintiff excepted generally to the ruling and the final judgment, but the court was not informed that complaint was made because a verdict was not taken in conformity with the ruling on the motion. And, though it is made the subject of assignments of error, they are not relied on in the brief. Our attention is, however, directed to the practice. We agree with counsel that the practice is objectionable. A serious question would have been presented had the trial court been distinctly advised that exception was taken to it and an opportunity given to correct it."

In a later case, Wear v. Imperial Window Glass Co. (C. C. A. 8) 224 F. 60, 63, in an opinion by the late Judge Sanborn, it is said: "There is another reason why no reviewable question of law is presented to this court in this case. A trial court is entitled to a clear specification by exception of any ruling or rulings which a party challenges and desires to review, to the end that the trial court itself may correct them if so advised, and, if it fails to do so, that there may be a clear record of the rulings and the challenges thereof. For this purpose a rule has been firmly established that an exception to any ruling which counsel desire to review, which sharply calls the attention of the trial court to the specific error alleged, is indispensable to the review of such a ruling."

If there was even a technical error, it was waived, and cannot be considered by this court. See, also, United States v. United States Fidelity & Guaranty Co., 236 U. S. 512, 35 S. Ct. 298, 59 L. Ed. 696; Fillippon v. Albion Vein Slate Co., 250 U. S. 76, 39 S. Ct. 435, 63 L. Ed. 853. The rule is a just one and affords an opportunity, both to the

trial court and opposing counsel, to correct the error, which in the instant case goes only to matters of form; and it enables the appellate court to determine what questions were actually presented to the lower court.

We conclude that the court correctly directed a verdict for the defendant on the ground of contributory negligence, and the judgment appealed from is affirmed.