**RANSTROM v. OREGON SHORT LINE R. CO. et al.**

No. 975.

District Court, D. Idaho, E. D.
Dec. 30, 1936.

Anderson, Bowen & Anderson, of Pocatello, Idaho, for plaintiff.

George H. Smith, of Salt Lake City, Utah, and H. B. Thompson, of Pocatello, Idaho, for defendants.

CAVANAH, District Judge.

This case presents the question by demurrer as to whether the complaint states facts sufficient to constitute negligence of the defendant in operating its train over a crossing on a foggy night without providing a flagman or warning lights at its railroad crossing where it crosses Maple street in the village of Alameda, Bannock county, Idaho.

The material facts alleged by the complaint are substantially these: The defendant Oregon Short Line Railroad Company, until January 1, 1936, owned and operated a railroad which runs out of the City of Pocatello, Idaho, in various directions; there were and are two lines of railroad running immediately out of the City of Pocatello, in a northerly direction, one of which runs along and parallel to the main highway, being United States Highway 91, while the other line running north takes off of the line running west or north of the City of Pocatello, and then reconnects with the line running along the highway to the north of the City of Pocatello, and was used almost entirely for the running of trains from Pocatello to Butte, Mont., while the line running parallel to the highway was not used. The line paralleling the highway was a stretch of track or line not used for the active operations of trains, which was known to and understood by the plaintiff prior to November 14, 1935. On the line paralleling the highway there is and was a crossing at Maple street in the village of Alameda, which street runs in generally an easterly and westerly direction, the crossing is much used by the village, and the houses and residences therein located are situated on both sides of the tracks paralleling the highway, and those living in the village crossed and recrossed the railroad frequently, and in the vicinity of the crossing it is thickly settled and populated. About 12 o'clock midnight on the 14th of November, 1935, plaintiff was traveling and riding in a certain automobile owned by A. L. Ranstrom and driven and operated by Francis Ranstrom, and was at that time going in a generally easterly direction on Maple street in the village, and west of the railroad on the highway; at that time and place there was an extremely thick, heavy, obscure and blinding fog at and in the vicinity of the crossing; the fog was of such character and so thick that human vision could not penetrate it for more than 5 feet away, except to see a light, and at that time and place the defendant Oregon Short Line was operating a train across the frequently used crossing and, notwithstanding the fog and the fact that it obscured the vision, the Oregon Short Line Railroad Company did not have any person at the crossing with a light or any other means notifying the traveling public of the presence of a train upon the frequently used crossing and, by reason of the frequent use of the crossing and the existence of the fog, the crossing while a train was being operated across it was dangerous and extremely hazardous to any person traveling in a motor vehicle upon Maple street. The crossing at the time and place was not marked or protected by any warning signs of its presence, and it has only one post on the easterly side of the track with a cross-arm thereon with the words "railroad crossing" on the cross-arm and on the westerly side of the track there was no warning sign whatsoever; the cross-arm on the easterly side of the track is completely obscured when trains or cars are upon the crossing and the crossing sign there is old, weather-beaten, dim, obscure, dilapidated, broken, and part thereof removed and gone; the train upon the crossing was traveling in a northerly direction from the City of Pocatello toward Butte and was in charge of and under the control of the defendant McCormick as conductor; the defendants were under the duty to the traveling public, and particularly to the plaintiff, to guard, flag, or otherwise protect the crossing by reason of the frequent use of the track at it, and the frequent use made of Maple street crossing by persons living in Alameda and in the vicinity of the crossing. In colliding with the train, the automobile was whirled, twisted, and turned around in the vicinity of the Maple street crossing when different cars of the train collided with and struck the automobile, which movement of the automobile continued until the whole of the train had passed the crossing; that, had the defendants guarded the crossing and exercised

258

reasonable care at the time and place in passing over the crossing, a flagman or watchman would have been stationed there and the train could have been stopped before all of the cars had collided with the automobile.

It is further alleged that defendant company was negligent in not protecting the crossing by adequate and lawful warning signs and in not providing a watchman or some person with a light at the crossing to warn oncoming traffic at the time and place and in not causing the crossing to be guarded by some member of the train crew or other flagman and in not stopping the train immediately after the collision and before the automobile had been knocked, torn, and twisted, as could have been done by exercise of ordinary care; the train crew consisted of the defendant Mc-Cormick, who was in charge of the train, an engineer, fireman, and three brakemen; the plaintiff was a citizen and resident of the State of Idaho and resident in the vicinity of the crossing and about six blocks from it; the automobile in which plaintiff was riding and traveling, by reason of the failure to have a flagman to guard, or other person to warn the approaching traffic at the time and place, and of the heavy, thick, and blinding fog, and the failure of the defendant company to properly guard the crossing by warning signs, collided with the train and then and there inflicted upon the plaintiff painful, extreme, and permanent injuries as alleged. Then follows the allegation as to the nature and character of the alleged injuries to plaintiff and which is alleged were proximately caused by the negligence of the defendant.

It will be observed from the complaint that the plaintiff resided in the vicinity of the crossing where the accident occurred and knew of its existence, and that from one to two trains passed over it each twenty-four hours; that he crossed and recrossed it frequently, and about 12 o'clock midnight on November 14, 1935, he was riding in an automobile owned by A. L. Ranstrom and driven by Francis Ranstrom on Maple street in the village of Alameda, and at the time of the accident there was an extremely thick, heavy, obscure and blinding fog, which was of such character and so thick that human vision could not penetrate it for more than 5 feet away. The automobile collided with the train which was passing over the crossing. Under those circumstances, plaintiff asserts that it was defendant company's duty to have, at the crossing, a light or flagman to warn the traveling public of oncoming trains, and its failure to do so was the proximate cause of the injury.

There are certain principles which apply and define the duties of a driver of an automobile and his guests and a railroad company, when a collision occurs at a crossing, where an accident occurs, and, first, as to the railroad company; if the crossing is more than ordinarily hazardous, it must maintain such facilities as to warn the traveling public of oncoming trains, and as to the driver of an automobile the primary and general rule is that he should exercise ordinary care when in approaching a railroad crossing and to keep a lookout to discover an approaching train, and the guest or passenger is also to keep a lookout to discover an approaching train and in some way to warn the driver in time for the avoidance of an accident.

With these principles in mind we approach the consideration of their application to the facts as disclosed by the complaint. Attention has not been called to any statute or ordinance requiring defendant company to have a light or flagman at the crossing. This question was before this court in the case of Walton v. Oregon Short Line Railroad Company and the Ninth Circuit Court of Appeals in affirming the judgment, 50 F.(2d) 352, 353, held that, in the absence of any statutory direction of keeping a flagman or gates at the crossing, it must first be shown that such crossing is more than ordinarily hazardous, and that no duty there existed to maintain a wigwag or automatic signal or flagman specifically employed to guard the crossing under the situation there, which is not the same as in the present case. The court there quoted, with approval, the rule laid down by the Supreme Court in the case of Grand Trunk Railway Company v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485, as follows: "It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous; as, for instance, that it is in a thickly populated portion of a town or city; or that the view of the track is obstructed either by the company itself, or by other objects proper in themselves; or that the crossing is a

much traveled one and the noise of approaching trains is rendered indistinct, and the ordinary signals difficult to be heard, by reason of bustle and confusion incident to railway or other business; or by reason of some such like cause; and that a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country."

Applying the circumstances stated in the Walton Case under which the railroad company is required to maintain a flagman or gates here, it would seem that under the allegations of the complaint the plaintiff has alleged facts to bring his case under them, as it is there stated by the Supreme Court and the Ninth Circuit Court of Appeals, if the situation at the crossing is "that it is in a thickly populated portion of a town or city * * * or that the crossing is a much traveled one * * * or by reason of some such like cause," the railroad company is required to maintain a flagman or precautions notifying the traveling public at the crossing. Referring then to the allegations of the complaint in this respect, we find that it is there alleged that the crossing is much used by the village of Alameda by crossing and recrossing it with frequency, and that houses and residences are located on both sides of the track paralleling the highway and that the crossing is in a thickly settled and populated portion of the village; that there was no flagman at the crossing with a light or any other means of notifying the traveling public of the presence of a train upon the frequently used crossing, and that it was not marked or protected by any warning signals of its presence, as there was only one post on the easterly side of the track with a cross-arm thereon with the words "railroad crossing" and on the westerly side of the railroad track there was no warning sign whatever and that the cross-arm on the easterly side of the track is completely obscured when trains or cars are upon the crossing and that it is old, weather-beaten, dim and obscure, dilapidated, broken, and a part thereof removed. Although under the allegation of the complaint it would seem to bring the case under the rule thus stated in the Grand Trunk Case approved by the Ninth Circuit Court of Appeals in the Walton Case, requiring the railroad company to maintain at a crossing a flagman or light or proper facilities to notify the traveling public of the presence of a train, yet we must approach the further question as to whether plaintiff and the operator of the car in which he was traveling used ordinary care or were guilty of contributory negligence in attempting to cross the track of the defendant at the crossing where it appears that at the time of the accident there existed an extremely thick, heavy, obscure, and blinding fog, of such a character and so thick that human vision could not penetrate for more than five feet except to see a light.

■■ It seems clear from the complaint that at the time of the accident a train of the defendant's was moving, and that the automobile in which plaintiff was traveling struck the side of the train which the driver of the automobile and the plaintiff could not see, "except by light" by reason of the thick fog, more than 5 feet away. Under the Statutes of Idaho there is established as a matter of law a standard of conduct on the part of highway travelers. By the provisions of the Statutes it is provided: Section 48-545, Idaho Codes Annotated. "a. *When Vehicles Must Be Equipped.* Every vehicle upon a highway within this state during the period from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible any person on the highway at a distance of two hundred feet, ahead, shall be equipped with lighted front and rear lamps as in this section respectively required for different classes of vehicles. b. * * * Every motor vehicle other than a motorcycle, road-roller, road machinery, or farm tractor shall be equipped with two head lamps, no more and no less, at the front of and on opposite sides of the motor vehicle, which head lamps shall comply with the requirements and limitations set forth in section 48-547 or section 48-548 and except as to acetylene head lamps shall be of a type which has been approved by the commissioner." Section 48-547, Idaho Codes Annotated, referred to in section 48-545, provides: "a. The head lamps of motor vehicles shall be so constructed, arranged, and adjusted that, except as provided in subsection c of this section, they will at all times mentioned in section 48-545 and under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person two hundred feet ahead, but shall

not project a glaring or dazzling light to persons in front of such head lamp."

We find it is further provided by the statute of Idaho, section 48-503 that: "Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving and upon conviction shall be punished as provided in section 48-559." And section 48-504 provides that: "a. Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb or property of any person. b. * * * 1. Fifteen miles an hour when approaching within fifty feet of a grade crossing of any steam, electric or street railway when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last two hundred feet of his approach to such crossing he does not have a clear and uninterrupted view of such railway crossing and of any traffic on such railway for a distance of four hundred feet in each direction from such crossing."

The standard of duty thus having been prescribed by the state statute of travelers on the highway, we must assume that, if the plaintiff was obeying the law, he would have been able to discern the train which was moving at the crossing when they drove into the side of it at a sufficient distance away if they were driving with the lights at the head of their automobile, as plaintiff alleges that they could see a distance of more than 5 feet "with a light" and, that being the case, they were not only required to have driving lights at the head of their automobile sufficient to render clearly discernible a person 200 feet ahead, but not to drive their automobile more than 15 miles an hour when approaching within 50 feet of any grade crossing of a steam railway where the driver's view is obstructed. This law taken into consideration with the facts appearing in the complaint, we must further assume that their lights were functioning efficiently, as no allegation appears to the contrary, and, if so, they could have seen by a light for a distance of more than 5 feet. Notwithstanding the duty required of the plaintiff and the driver of the automobile and their knowledge that they were approaching a railroad crossing, the location of which plaintiff knew, and that a train might pass over it, plaintiff joined his companion in driving into the side of the moving train. Independent of the provisions of the state statute referred to, the weight of authority is, and which is based upon sound reason, that one cannot, without being charged of a failure of using ordinary care or guilty of contributory negligence, as a matter of law, blindly operate an automobile upon the public highway and cross a railroad crossing which he is familiar with, when his view is obstructed by a thick fog, smoke, or snow, although the railroad company may have been negligent. This principle is settled in the case of McCrory v. Chicago, M. & St. P. R. Co. (C.C.) 31 F. 531, where it is held that where deceased, who was familiar with the crossing, attempted to cross while the view was obstructed by smoke from engine, he was guilty of contributory negligence as a matter of law.

In the case of Mabray v. Union Pacific Railroad Co. (D.C.) 5 F.Supp. 397, 398, 403, the court sustained a demurrer to the complaint which alleged that there was no light or flagman at the railroad crossing to warn the public and the accident occurred about 3 o'clock in the morning, when it was dark and sleet and snow obstructed the vision of the driver of the automobile, which resulted in the automobile coming in contact with the train moving over the crossing. Reliance for the cause of action as to the negligence of the defendants was based upon the ground that the defendant at the time of the accident was violating certain ordinances of the City of Denver and that it failed to have a watchman on duty at the time. With these facts the court says: "nor are the other plaintiffs under these and other authorities in a better position than was Mabray, the driver. Even admitting the negligence of the defendant, where the negligence of the driver is the proximate cause of the accident, neither the driver nor his passengers can recover. It was said by the late Judge Cotteral, speaking for a court of our circuit, consisting of Judges Lewis, Cotteral, and McDermott, in Summers v. Denver Tramway Corporation (Rice v. Denver Tram-

way Corp.) 43 F.(2d) 286, at page 287 (C. C.A.10): 'Appellants as guests in the automobile, with their opportunity to observe whether a car was approaching, had the duty to exercise reasonable care in their situation for their safety, but they gave no heed to the danger, and they were undoubtedly negligent in not keeping a lookout to discover the approaching car, and in some way warn the driver of the fact, so that he might avoid the collision. Davis v. Chicago, R. I. & P. R. Co. (C.C.A.) 159 F. 10, 16 L.R.A.(N.S.) 424; Brommer v. Pennsylvania R. Co. (C.C.A.) 179 F. 577, 29 L.R.A.(N.S.) 924; Philadelphia & Reading R. Co. v. LeBarr (C.C.A.) 265 F. 129; Bradley v. Missouri Pac. R. Co. (C. C.A.) 288 F. 484; Noble v. Chicago, M. & St. P. Ry. Co. (C.C.A.) 298 F. 381; Southern Ry. Co. v. Priester (C.C.A.) 289 F. 945; Chicago & E. I. R. Co. v. Sellars (C. C.A.) 5 F.(2d) 31; Parramore et al. v. Denver & R. G. W. R. Co. (C.C.A.) 5 F. (2d) 912."

In Brown v. Southern R. Co. (Pennington v. Southern R. Co.), 61 F.(2d) 399 (C. C.A.5), the facts alleged in the complaint were somewhat similar to the present case and a demurrer to it was sustained. It appears that shortly after midnight, when it was dark, an automobile in which plaintiffs were traveling, one as the driver and one as a passenger at the time of the accident, collided with a freight car which was standing across the road, and the lights of the automobile did not discover its presence until the automobile had approached within 20 feet of the car and plaintiff did not see the obstruction until too late to avoid it. It was there further alleged that the defendant was negligent in obstructing the road with a freight car, without having gates to guard the approach, without any lights upon the car, and without any one to act as guard to warn approaching motorists, or bells, whistles, or signals to indicate the presence of the car. The court held under such circumstances that the driver of the automobile was lacking in ordinary care in failing to have his machine under ordinary control so as to be able to stop it before colliding with the car, and the fact that Pennington was a passenger did not alter the situation in his favor, as his failure to exercise ordinary care in seeing the obstruction and warning the driver in time for its avoidance precluded a recovery and that there was no doubt that the negligence of the driver was

the proximate cause of the accident and therefore the passenger could not recover. Orton v. Pennsylvania Railroad Co. (C.C. A.) 7 F.(2d) 36.

The facts recited in the case of Dunlap v. Pacific Electric Railway Company et al., decided by the District Court of Appeals of California, 12 Cal.App.(2d) 473, 55 P. (2d) 894, and which was approved by the Supreme Court of that state, are analogous to the present case, as it appears there that the accident occurred at 11 o'clock at night on a very foggy night at a railroad crossing. The automobile ran into the side of the train, and the driver's visibility ahead was between 15 feet and 20 feet when using his lights. A directed verdict for the defendant was granted, and the court held that the plaintiff was barred of a recovery by reason of his negligence in operating the car.

The Supreme Court of Idaho recognized the rule that the driver and guest's negligence as being the proximate cause of injury in a collision with a standing box car, and has said that the presence of the box car merely presented a condition and was not the proximate cause of the injury and that the cause lay primarily in the negligence of the plaintiff and his guest. Rowe v. Northern Pacific R. Co., 52 Idaho, 649, 17 P.(2d) 352.

The further rule is recognized by the Supreme Court of Idaho, that "contributory negligence, being a defense to be pleaded and proved, is generally a question of fact, but when the established facts and circumstances permit only one possible conclusion to be drawn by a reasonably prudent man, it becomes a matter of law 'for the court's determination," Dale v. Jaeger, 44 Idaho, 576, 258 P. 1081, 1082.

It is not alleged in the complaint that the accident was occasioned by any mismanagement of the train and, after the train had reached the crossing and passed over it, the duty of the flagman or lights ended as to that train, and the train then being there at the time the driver of the automobile ran into the side of it was such an obstruction in itself as to give notice of danger. The defendant's cars were rightfully occupying the crossing.

The conclusion must be reached, which is in entire accord with the weight of authority as to the law when applied to the facts disclosed by the complaint, that the plaintiff and the driver of the automobile

were not exercising ordinary care when in driving and traveling in it, and also were guilty of contributory negligence at the time of the accident which precludes a recovery.

The demurrer is sustained.